# EXHIBIT A



# IN THE 26TH JUDICIAL CIRCUIT COURT, CAMDEN COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division: | **Case Number: 17CM-CC00093** |
| Plaintiff/Petitioner:<br>LINDA SEATON | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH CHANDLER GREGG<br>901 E BATTLEFIELD<br>SPRINGFIELD, MO 65807 |
| | vs. |
| Defendant/Respondent:<br> MODINE MANUFACTURING COMPANY | Court Address:<br>CAMDEN COUNTY COURTHOUSE<br>1 COURT CIRCLE, STE 8<br>CAMDENTON, MO 65020 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:  MODINE MANUFACTURING COMPANY**
 **Alias:**

**RA - CSC LAWYERS INC SERVICE**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO  65101**

*COURT SEAL OF*

*CAMDEN COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| 5/2/17 | /S/ TRICIA MCCOLLUM |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

| _____ | _____ |
|---|---|
| Printed Name of Sheriff or Server | Signature of Sheriff or Server |

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

| Date | Notary Public |

| **Sheriff's Fees** | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $    10.00 | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - Camden - May 01, 2017 - 05:45 PM

## IN THE CIRCUIT COURT OF CAMDEN COUNTY, MISSOURI

| | |
|---|---|
| LYNDA SEATON<br>WES SEATON<br><br>       Plaintiffs,<br><br>vs.<br><br>MODINE MANUFACTURING COMPANY<br>**Serve**:   CSC-Lawyers Incorporating Service<br>        221 Bolivar Street<br>        Jefferson City, MO 65101<br><br>and<br><br>UTC AEROSPACE SYSTEMS, INC.<br>**Serve**:   CT Corporation System<br>        120 South Central Avenue<br>        Clayton, MO 63105<br><br>and<br><br>JOHN BLATCHFORD<br>**Serve at**:   115 Clearwater Drive<br>           Camdenton, MO 65020<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No.: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PETITION FOR DAMAGES

COME NOW plaintiffs Lynda Seaton ("Lynda") and Wes Seaton ("Wes"), as the only first class wrongful death beneficiaries for the death of Gary Seaton, and Lynda Seaton as a property owner harmed by defendants, by and through counsel, and for their causes of action against defendants, and each of them, state and aver as follows:

### PARTIES

1.     Plaintiffs Lynda Seaton and Wes Seaton are residents of the state of Missouri.

2.     Defendant UTC Aerospace Systems, Inc. ("UTC Aerospace") is a Delaware

corporation having its principal place of business in North Carolina and doing business in the state of Missouri. It may be served through its registered agent, CT Corporation System, 120 South Central Avenue, Clayton, MO 63105. Defendant UTC Aerospace Systems, Inc., is the successor in interest to Sundstrand.

3. Defendant Modine Manufacturing Company ("Modine") is a Wisconsin corporation that does business in Missouri. It may be served through its registered agent CSC-Lawyers Incorporating Service, 221 Bolivar Street, Jefferson City, MO 65101.

4. Defendant John Blatchford ("Blatchford") is a Missouri resident. He may be served at 115 Clearwater Drive, Camdenton, MO 65020.

CASE OVERVIEW

5. This suit concerns the operations of the industrial plant located on Sunset Drive in Camdenton, Missouri ("the Plant"), and the release of cancer-causing trichlorethylene (TCE) and other harmful compounds by defendants into the environment, ambient air outside the plant and into the surrounding fields, soils, streams and water supply, resulting in devastating illness and injury to Gary Seaton, Gary's eventual death, and resulting in contamination in the surrounding community, to include Lynda's and Gary's property. This suit also concerns the reckless exposure by defendants to workers within the Plant facility, exposing Gary Seaton and others to TCE toxins, other solvents, carginogenic agents and volatile organic compounds, and the resultant devastating diseases and conditions known to be caused by such exposures. This suit concerns the poisoning of Gary Seaton, and the community, by Modine and Sundstrand.

6. The Plant, which manufactured metal machine parts, frequently used a degreasing agent called trichloroethylene (TCE), and also used other solvents, carcinogenic agents and volatile

2

organic compounds. TCE is a known carcinogen which causes various cancers and autoimmune diseases, among other complications.

7.      During the relevant time frame, Gary Seaton lived at 415 Mulberry, Camdenton, MO, 65020, and received exposure to TCE, and other carcinogenic agents and compounds, through the water supply from which he drank, the ambient air, the soil, and from soil vapors that intruded into his home, which caused or contributed to cause Gary's eventual cancer and death.

8.      During said time frame, Gary also worked at the Plant and received exposure due to the work conditions at the Plant, which caused or contributed to Gary's cancer and death.

9.      As a result of his frequent exposure to TCE and/or other compounds, from (a) the environment, and (b) while working at the Plant, Gary was diagnosed with liver, colon, and bladder cancer; and, on August 8, 2016, Gary died of said diseases which were caused by the defendants.

10.      Beginning in or about 1972, and continuing until 1990, the Plant was owned and operated by Sundstrand Corporation and/or Sundstrand Tubular Products and/or Hamilton Sundstrand (hereinafter jointly, individually or in the alternative "Sundstrand), companies to which defendant UTC Aerospace Systems, Inc., is the successor in interest. UTC Aerospace merged with Sundstrand (either explicitly or through *de facto* merger) and/or is the corporate continuation of Sundstrand. Defendant UTC Aerospace Systems, Inc. ("UTC Aerospace") is therefore liable for all tortious acts and omissions perpetrated by Sundstrand. From 1990 until 2012, the Plant was owned and/or operated by defendant Modine Manufacturing Company ("Modine").

11.      As the lawfully-wedded wife of Gary Seaton, Lynda is within the class of statutory beneficiaries entitled to bring and maintain a wrongful death action for the death of Gary Seaton, pursuant to Mo. Rev. Stat. § 537.080. As the natural born son of Gary and Lynda Seaton, Wes is

3

within the class of statutory beneficiaries entitled to bring and maintain a wrongful death action for the death of Gary Seaton, pursuant to Mo. Rev. Stat. § 537.080. Lynda and Wes are the only first class wrongful death beneficiaries entitled to recover for the wrongful death of Gary Seaton.

12.     At all relevant times, Lynda owned the property at 415 Mulberry, which Lynda continues to own, and said property has been contaminated by defendants, resulting in devaluation of said property.

### JURISDICTION & VENUE

13.     This Court has jurisdiction over defendants Modine and UTC Aerospace Systems, Inc., by virtue of both companies' purposeful and extensive contacts with the state of Missouri, and the fact that this suit arises directly from those contacts. This Court has jurisdiction over defendant Blatchford because he is a resident of the state of Missouri.

14.     Venue is proper in this Court pursuant to R.S. Mo. § 508.010.

### GENERAL ALLEGATIONS

15.     From at least the 1970's until the late 1980's, Sundstrand discharged untreated wastewater into the city-operated, Hulett Lagoon, which wastewater contained high levels of TCE and other carcinogenic agents, and which TCE and carcinogens migrated into the subsurface. This included TCE migration into a perched groundwater zone slightly more than 100 feet below the ground surface and also into a deep aquifer for below the surface, creating a deep groundwater plume that was pulled southward in the soil and subsurface by the nearby Mulberry Well.

16.     Beginning in 1986, shortly after the Mulberry Well was built, the Mulberry Well became contaminated with TCE and other toxic compounds, as a result of Sundstrand's conduct. Beginning in or about 1990, Modine's conduct, described more fully herein, continued to

contaminate the Mulberry Well. The Mulberry Well was first tested for TCE in or about 1997, at which time TCE was found in the Mulberry Well. In February 1998, TCE concentrations in the well exceeded the EPA's Maximum Contaminant Level (MCL) of 5 ug/L. Upon continued testing, TCE concentrations in the Mulberry Well have been found as high as 50 ug/L, or more than 10x the MCL.

17.     Decedent Gary Seaton was employed at the Plant from February 1969 until 2012, when the Plant closed. He was thus employed by both Sundstrand and Modine.

18.     While employed at the Plant, Gary worked as a machine operator. During said times, he used or came into contact with TCE and other carcinogenic compounds, as a result of being ordered, required, and/or instructed by his employers to use TCE and such compounds. Gary was instructed to use TCE and other toxins by his supervisors, including Blatchford, pursuant to his employment. Gary was also instructed to use trichloroethane pursuant to his employment.

19.     During their respective ownership and operation of the Plant, both Sundstrand and Modine used large quantities of TCE and/or tricloroethane (TCA) as a de-greasing agent. In addition, from about 1993-1997, Modine used methylene chloride as a de-greasing agent.

20.     When the TCE, TCA and other compounds had been used, defendants Sundstrand, Modine, and Blatchford, ordered workers to dump the TCE and waste compounds onto the ground and into the soil outside the Plant. Upon information and belief, such dumping continued to occur on a near-constant basis until the mid-to-late 1990s, with said conduct occurring by all defendants named herein.

21.     Workers for Modine and Sundstrand were also instructed by said companies and its management, and by defendant Blatchford, to dump barrels of the TCE and other carcinogenic compounds into the environment, and workers at said facility did so while acting for Sundstrand and

5

Electronically Filed - Camden - May 01, 2017 - 05:45 PM

Modine.

22.     Sundstrand, Modine, and Blatchford, and each of them, contaminated the environment surrounding the Plant, exposing residents to TCE contaminants and other carcinogenic compounds, which both (a) caused illness and injury to those surrounding the Plant, including Gary Seaton, and (b) caused contamination of surrounding properties, devaluing said properties, including the property of Lynda Seaton.

23.     Sundstrand and Modine, and each of them, also left many TCE-filled, 55 gallon drums in the environment, allowing said drums to corrode and empty TCE into the soil, groundwater and environment. Said drums contained other carcinogens and volatile organic compounds, which defendants released into the environment.

24.     Sundstrand and Modine, and each of them, released TCE and other volatile organic compounds into the environment, ambient air outside the Plant, fields, soils, streams and water supply surrounding the Plant, thus exposing Gary and others to TCE toxins and other poisons.

25.     Sundstrand and Modine, and each of them, during their respective periods of ownership and/or operation of the Plant, ordered and instructed workers at the Plant, including Gary Seaton, to use TCE, TCA and other volatile organic compounds in performing a variety of tasks and duties, including cleaning grease off of metal parts.

26.     Sundstrand, Modine, and Blatchford, and each of them, exposed workers including Gary Seaton to TCE and other carcinogens, and failed and/or refused to provide workers with safety equipment and devices necessary for handling and disposing of TCE and other compounds.

27.     Sundstrand's conduct, Modine's conduct, and Blatchford's conduct, resulted in TCE and other volatile organic compounds in the environment surrounding the plant - in the air, the

groundwater, the water supply, the soil, and people's homes, and resulted in exposure to said TCE and other carcinogens by Gary Seaton.

28. At all times relevant to this Petition, Sundstrand and Modine, and each of them, knew or should have known that TCE and the other compounds were toxic, carcinogenic, and/or otherwise dangerous to human health and life. Further, Modine and Sundstrand have been advised of the contamination they have caused in this community, and the dangers to which they have exposed both workers and property owners, and Modine and Sundstrand have failed and refused to take proper remedial measures to reduce or eliminate the dangers that each has caused.

29. When Modine was instructed to perform clean-up of the area and/or take remedial action with regard to the TCE contamination for which it is responsible, Modine responded to the government and the community surrounding the Plant by (a) misrepresenting information and data to the government, (b) concealing its misconduct, (c) continuing to harm the people in the community surrounding its Plant, including Gary Seaton, and (d) requesting that it be allowed to close the site and perform no further remediation.

30. In or about December 2009, the United States Environmental Protection Agency (EPA) wrote to Modine, identifying "Modine's continued mis-use of TCE toxicity values," and Modine's continued disregard of EPA and Missouri Department of Natural Resources (DNR) guidance in responding to calls for action in remediating the contamination that Sundstrand and Modine have caused.

31. The nature of TCE is that once it has contaminated an area, it will typically remain a contaminant in the area and soil for hundreds of years.

32. In or about October, 2015, DNR performed soil testing at the edge of the Plant's

7

property, only 10 feet from residential property lines, with said testing demonstrating that the screening levels for TCE were 1000x the appropriate screening level.

33. As a result of his contact with TCE and other chemicals at the Plant and/or his exposure to and consumption of TCE and other chemicals in the water and air surrounding the plant, Gary developed stage 4 liver cancer, colon cancer, bladder cancer, and lung cancer. Gary was first diagnosed in 2013.

34. As a result of his cancer and illnesses suffered as a result of the TCE exposure and/or exposure to other compounds and carcinogens, caused by defendants, Gary Seaton died on August 8, 2016.

35. As a result of the contamination caused by defendants, Lynda's property has been devalued and diminished.

36. Defendant UTC Aerospace is vicariously liable for all acts and omissions of Sundstrand described herein.

## COUNT I:

### NEGLIGENCE AGAINST DEFENDANTS FOR EXPOSURE INTO THE ENVIRONMENT WHICH CONTRIBUTED TO CAUSE THE DEATH OF GARY SEATON

COME NOW Plaintiffs Lynda and Wes Seaton, by and through counsel and for Count III of this Petition, states as follows:

37. Plaintiffs re-allege and restate all paragraphs and subparagraphs of this Petition and incorporate said paragraphs as though fully set forth herein.

38. Gary's injuries and death were the direct and proximate result of the negligence, carelessness, faults, and omissions of defendants Modine and UTC Aerospace Systems, Inc. (as

8

successor in interest to Sundstrand), for each of the following reasons, either individually, in combination or in the alternative:

  a. Dumping TCE and other compounds onto the ground;

  b. Ordering employees to dump TCE onto the ground;

  c. Contaminating the Mulberry Well;

  d. Contaminating the soil surrounding the facility and the Seaton's home;

  e. By failing to establish and/or enforce rules for safe disposal of TCE chemicals, TCE chemical byproduct, and other compounds;

  f. By leaving barrels of TCE and other carcinogenic agents exposed outside, to deteriorate and release TCE and other carcinogens into the environment;

  g. By ignoring the evidence that property owners, workers and animals were becoming ill and/or diseased as a result of the contamination defendants caused;

  h. By failing to perform proper testing;

  i. By failing to consult with safety experts;

  j. By failing to properly dispose of the TCE and other chemicals;

  k. By failing to take remedial measures to remedy the contamination it caused;

  l. By failing to provide medical monitoring to the community;

  m. By failing to heed the warnings of safety experts and personnel;

  n. By ignoring the warnings, signs, and symptoms that workers and/or persons and animals surrounding the plant were becoming sick, injured,

and ill;

o. By ignoring signs, symptoms, and warnings that its conduct was contaminating the environment;

p. By ignoring literature and/or public health announcements regarding the dangers of TCE;

q. By misrepresenting the level of contamination;

r. By failing and/or refusing to clean up the contamination they caused; and

s. By actively misleading the public and governmental agencies regarding the level of contamination and/or danger they caused.

39. The acts described above were performed intentionally, and defendants were substantially certain that injuries to, and deaths of, people would occur.

40. Defendant Blatchford was negligent and failed to exercise reasonable care in the following ways, with said negligence directly contributing to cause illness and death to Gary Seaton:

a. Ordering workers and/or employees to dump TCE and other compounds onto the ground and into the environment;

b. Dumping TCE and other compounds onto the ground and into the environment;

c. Refusing and/or failing to take proper actions after being informed of the dangers being caused to workers and community members.

41. Modine, Sundstrand, and Blatchford knew, or should have known of, the above conditions and/or dangers, individually and/or in the aggregate, but took no action to avoid injury

10

to others.

42.     The danger of injury from the above negligent acts was reasonably foreseeable to Modine, Sundstrand and Blatchford.

43.     As a result of the negligence of Modine, Sundstrand and Blatchford, Gary suffered significant ongoing and debilitating injuries to his liver, colon, bladder, and lungs.  He suffered pain of body and emotional distress as a result of these injuries.

44.     By reason of Gary's injuries and illnesses, Gary and Lynda paid or became obligated to pay sums of money for medical care and treatment.

45.     Prior to the aforesaid injury, Gary was an able-bodied man capable of doing and performing work and labor.  As a direct and proximate result of the negligence of Modine, Sundstrand and Blatchford, Gary suffered a diminished capacity for work, labor and pleasure.

46.     Because of Gary's death, plaintiffs Lynda Seaton and Wes Seaton were deprived of Gary's services, companionship, comfort, instruction, consortium, guidance, training, counsel and support.

47.     Plaintiffs have also incurred medical, funeral, burial and other financial losses as a result of defendants' negligence which caused Gary's death.

48.     Modine and Sundstrand's conduct, as described above, manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of Gary and others.  This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive or aggravating circumstance damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, plaintiffs pray for judgment against defendants Modine, UTC Aerospace

11

Systems, Inc., as successor in interest to Sundstrand, and Blatchford, that they be awarded an amount that will fairly and reasonably compensate them for the injuries to Gary Seaton, for their losses sustained as a result of the premature death of Gary Seaton, for punitive or aggravating circumstance damages, for their costs herein expended and for such other relief as the Court deems just and proper.

## COUNT II:

### NEGLIGENCE AGAINST DEFENDANTS FOR WORK CONDITIONS WHICH CONTRIBUTED TO CAUSE THE DEATH OF GARY SEATON

COME NOW Plaintiffs Lynda and Wes Seaton, by and through counsel and for Count II of this Petition, state as follows:

49.     Plaintiffs re-allege and restate all preceding paragraphs and incorporate said paragraphs as though fully set forth herein.

50.     The injury and illness to Gary Seaton, and specifically his "occupational disease," which were caused by the defendants, were first identified, diagnosed and/or suffered on or about July 25, 2013. Accordingly, Gary first suffered an occupational disease, as a result of Modine's and Sundstrand's workplace conduct, in July 2013.

51.     Pursuant to R.S. Mo. § 287.120, effective from 2005 to 2014, workers' compensation was not the exclusive remedy for employees who were exposed to hazardous work conditions and suffered an "occupational disease" during said time frame. *State ex rel KCP&L Greater Mo. Oper. Co.*, v. Cook, 353 S.W.3d 14, 16 (Mo. App. 2011).

52.     As of January 1, 2014, legislative amendments added "occupational disease" to the exclusive remedy statute, bringing said claims within workers' compensation. R.S. Mo. §

12

287.200.4. Constitutionally, statutes that effect the amount of damages that an injured person can recover are matters of substantive law, and thus, cannot apply retroactively to injuries and illnesses previously suffered. *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 760 (Mo. 2010) ("It is settled law in Missouri that the legislature cannot change the substantive law for a category of damages after a cause of action has accrued."). And see, *Kesterman v. Wallut*, 157 S.W.3d 675, 686 (Mo. App. 2004) ("Workers' compensation law is clearly substantive law."). As such, Gary's "occupational disease" first sustained in July 2013, is a disease for which workers' compensation laws are not the exclusive remedy for workplace-related illness/injury, and plaintiffs are entitled to pursue direct civil claims against the defendants for Gary's injuries, illnesses and death which were caused or contributed to be caused by defendants' conduct toward Gary in the workplace.

53. Defendants Modine and UTC Aerospace Systems, Inc., as successor in interest to Sundstrand, were negligent and failed to exercise reasonable care, for each of the following reasons, either individually, in combination or in the alternative, with such negligence directly contributing to cause Gary's illness, disease and death:

    a.    By failing to provide reasonably safe conditions for work;

    b.    By failing to provide reasonably safe methods of work to accomplish removal of grease from metal parts;

    c.    By failing to provide appropriate safety gear to Gary and other workers, including but not limited to appropriate breathing apparatus and/or properly-operating breathing apparatus for those in close proximity to TCE chemicals and other compounds;

13

d.    By failing to provide Gary safe tools and protective gear for handling TCE and other compounds;

e.    By failing to establish and/or enforce safe work rules for workers who were working with TCE and other dangerous compounds;

f.    By failing to establish and/or enforce rules for safe disposal of TCE and other chemicals, TCE chemical byproduct and other chemicals;

g.    By forcing workers to use TCE and/or come into contact with TCE on a regular basis;

h.    By failing to analyze workers' exposure to TCE and other chemicals, to determine the health risks to said workers;

i.    By failing to inspect the workplace to ensure the conditions existing were appropriate and safe for workers operating in close proximity to TCE and other chemicals;

j.    By failing to consult appropriate experts to determine whether the working conditions were safe and appropriate;

k.    By failing to provide adequate training to its employees regarding working with TCE and other chemicals;

l.    By failing to warn workers, including Gary, of the health risks and dangers associated with the unsafe working conditions present;

m.    In actively misleading workers concerning the safety of TCE and the safety of their working conditions;

n.    In threatening workers or otherwise discouraging workers from addressing

their concerns about the harmful effects of TCE;

    o.    By failing to properly maintain the equipment, tools, and safety apparatus provided to its employees for work, including Gary;

    p.    By failing to prevent the spilling of TCE onto the floor of the Plant and onto workers, including Gary;

    q.    By requiring Gary to come into contact with TCE and with other chemicals, without proper training or protection;

    r.    By failing to take remedial measures to remedy the contamination it caused;

    s.    By failing to provide medical monitoring to its workers;

    t.    By failing to heed the warnings of its workers and/or of safety experts; and

    u.    By ignoring the warnings, signs, and symptoms that workers and/or persons and animals surrounding the plant were becoming sick, injured, and ill.

54.    The acts described above were performed intentionally, and defendants were substantially certain that injuries to workers would occur.

55.    Defendant Blatchford was negligent and failed to exercise proper care in the following ways, with his negligence directly contributing to cause Gary's illness, disease and death:

    a.    In ordering workers, including Gary, to use TCE;

    b.    In refusing to provide workers with proper equipment;

    c.    In ordering workers at the Plant, including Gary Seaton, to come into

contact with conditions that he reasonably knew to be dangerous;

d.    In ordering workers at the Plant, including Gary Seaton, to dispose of TCE by dumping it on the ground outside the Plant;

e.    In evading and/or assisting in the evasion of governmental inspections concerning the use of TCE;

f.    In failing to provide workers with necessary safety equipment, devices and/or tools;

g.    In failing to instruct the workers under his charge of the dangers posed by exposure to and contact with TCE;

h.    In failing to implement all necessary worksite rules and processes related to worker safety;

i.    In failing train the workers under his charge on how to properly handle TCE; and

j.    All other acts of carelessness and negligence to be learned through discovery.

56.    Modine, Sundstrand and Blatchford, knew or should have known of, the above conditions and/or dangers, individually and/or in the aggregate, but took no action to avoid injury to their workers, including Gary. Moreover, Modine and/or Sundstrand concealed knowledge of said dangers and contamination.

57.    The danger of injury from the above negligent acts, and/or the specific harm to Gary, was reasonably foreseeable to Modine, Sundstrand and Blatchford.

58.    As a result of the negligence of Modine, Sundstrand and Blatchford, Gary suffered

Electronically Filed - Camden - May 01, 2017 - 05:45 PM

significant ongoing and debilitating injuries to his liver, colon, bladder, and lungs, and then died. He suffered pain of body and emotional distress as a result of these injuries, before his death.

59. By reason of his injuries, Gary and Lynda paid or became obligated to pay sums of money for medical care and treatment, for which plaintiffs are entitled to recover.

60. Prior to the aforesaid illnesses and disease, Gary was an able-bodied man capable of doing and performing work and labor. As a direct and proximate result of the negligence of Modine, Sundstrand and Blatchford, Gary suffered a diminished capacity for work, labor and pleasure.

61. As a direct and proximate result of the negligence of defendants, Gary died.

62. As a direct result of defendants' negligence, Gary suffered years of conscious pain and suffering, before his death, for which plaintiffs are entitled to recover.

63. Because of Gary's death, plaintiffs were deprived of his services, companionship, comfort, consortium, instruction, guidance, training, counsel and support.

64. Plaintiffs have also incurred medical, funeral, burial, and other financial expenses/losses as a result of Gary's illnesses and death.

65. Modine and Sundstrand's conduct, as described above, manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of Gary and others. This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive or aggravating circumstance damages against defendants Modine and UTC Aerospace so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, plaintiffs pray for judgment against defendants Modine, UTC Aerospace

Systems, Inc., as successor in interest to Sundstrand, and Blatchford, that they be awarded an amount that will fairly and reasonably compensate them for the injuries and damages to Gary Seaton, for their losses upon Gary's death, for punitive or aggravating circumstance damages, for their costs herein expended, and for such other relief as the Court deems just and proper.

## COUNT III:

### STRICT LIABILITY AGAINST UTC AEROSPACE & MODINE FOR ABNORMALLY DANGEROUS ACTIVITY

COME NOW Plaintiffs Lynda and Wes Seaton, by and through counsel and for Count III of this Petition, state as follows:

66.     Plaintiffs re-allege and restate all paragraphs and subparagraphs of this Petition and incorporate said paragraphs as though fully set forth herein.

67.     The operation of the Plant by Modine and Sundstrand, and each of them, entailed the use, storage, and disposal of large quantities of TCE, which constituted an abnormally dangerous activity.

68.     Defendants Modine and UTC Aerospace Systems, Inc., as successor in interest to Sundstrand, are strictly liable in tort for the resulting injuries to, and death of, Gary Seaton.

69.     Modine and Sundstrand's conduct in the use, storage, and disposal of TCE was not a matter of common usage, was particularly inappropriate at the location of the Plant, was of little or no value to the local community, and was abnormally dangerous. Any alleged value that the use, storage, and disposal of the TCE at this location had to the community, which value plaintiffs posit was zero, was far outweighed by the dangerous attributes of TCE to human health and life, and to the environment.

18

70.     There was a high degree of risk that harm would occur to persons and lands; the likelihood of harm from defendants' activities was great; there was an inability to eliminate the risk of such conduct even through the exercise of reasonable care; and the use and disposal of TCE is not a matter of common usage.

71.     The operation of the Plant by Modine and Sundstrand, and each of them, using and disposing of large quantities of TCE, constituted an activity that was abnormally dangerous, for each of the following reasons and considerations, individually, in combination, or in the alternative:

      a.     The existence of a high degree of risk to the health and safety of Gary Seaton, the local community, property-owners surrounding the Plant, and workers caused by Modine and Sundstrand's improper and negligent use, storage, and disposal of TCE on the premises of the Plant;

      b.     Given the hazardous nature of the TCE used, stored, and disposed of on the Plant's premises and released into the environment, there was an extremely high likelihood of injury or illness to persons;

      c.     Due to the inherently hazardous nature of the TCE chemicals used, stored, and disposed of by Modine and Sundstrand in the operation of the Plant, Modine and Sundstrand were unable to eliminate the risk of harm posed by TCE through the exercise of reasonable care;

      d.     The use, storage, and disposal of TCE is not a matter of common usage; and

      e.     The dangers associated with the use, storage, and disposal of TCE by

Modine and Sundstrand rendered such use, storage, and disposal of little

or no benefit to the local community, and of substantial harm and risk to

the community. Any value that the use, storage, and disposal of TCE at

the location of the Plant was far outweighed by the dangers of TCE to

human health and life, and to the environment.

72.    Modine and Sundstrand, and each of them, knew, or should have known of, the

above conditions and/or dangers, individually and/or in the aggregate, but took no action to avoid

injury to their workers and/or community members,.

73.    The danger of injury from the above-stated abnormally dangerous conditions,

and/or the specific harm to Gary, was reasonably foreseeable to Modine and Sundstrand from the

existence of the abnormally dangerous activities described above, individually and/or in the

aggregate.

74.    As a result of the abnormally dangerous activities of Modine and Sundstrand,

Gary suffered significant ongoing and debilitating injuries to his liver, colon, bladder, and lungs

and has and will suffer associated problems as a result of these conditions. He suffered pain of

body and emotional distress as a result of these injuries.

75.    By reason of his injuries, Gary and Lynda paid or become obligated to pay sums

of money for medical care and treatment, which are damages recoverable from defendants.

76.    Prior to the aforesaid injury, Gary was an able-bodied man capable of doing and

performing work and labor. As a result of the inherently dangerous conditions, Gary suffered a

diminished capacity for work, labor and pleasure.

77.    As a direct and proximate result of the defendants' conduct, Gary died.

20

78.     Prior to his death and as a result of defendants' conduct, Gary suffered years of conscious pain and suffering, for which plaintiffs are entitled to recover damages.

79.     Because of Gary's death, plaintiffs Lynda Seaton and Wes Seaton were deprived of his services, companionship, consortium, comfort, instruction, training, guidance, counsel and support.

80.     Plaintiffs also incurred medical, funeral, burial, and other financial expenses/losses as a result of Gary's untimely death.

81.     Modine and Sundstrand's conduct, for which conduct UTC is liable, as described above, manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of Gary and others.  This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, Plaintiffs move this Court for judgment for all damages set forth above, punitive damages, costs, interest thereon, and all other remedies available at law.

## COUNT IV:

### PROPERTY DAMAGE & DEVALUATION

COMES NOW Plaintiff Lynda Seaton, by and through counsel, and for her claim against Defendants UTC and Modine in Count IV, states as follows:

82.     Plaintiff Lynda Seaton incorporates all paragraphs and sub-paragraphs of this Petition more fully herein by reference.

83.     Defendants' negligence, and the strict liability for which defendants are liable, described above, directly and proximately caused or contributed to cause contamination of the

21

property located at 415 Mulberry, Camdenton, MO 65020, which property was owned and occupied by Gary and Lynda Seaton at all relevant times.

84.     Lynda Seaton continues to own the property at 415 Mulberry.

85.     The contamination onto the property at 415 Mulberry constitutes a continuing wrong, and continuing trespass, by the defendants, and an interference with Lynda's use of her property at 415 Mulberry. By law, this is a trespass, for which defendants are liable and Lynda is entitled to recover damages.

86.     Defendants engaged in an unreasonable use of the Plant property, which impaired Lynda's and Gary's right to use of their land at 415 Mulberry. By law, this constitutes a nuisance for which defendants are liable and Lynda is entitled to recover damages.

87.     As a direct and proximate result of defendants' negligence and trespass, the nuisance caused by defendants, and the strict liability for which defendants are liable, Lynda's home has been damaged, Lynda's property has been devalued, and plaintiff Lynda Seaton is entitled to fair and reasonable compensation including but not limited to the loss of market value of the home and property, the difference between the full value of the home and property if it were not contaminated and its value in its contaminated state, and/or the cost to repair and replace the home and remedy the contamination on Lynda's property, plus special damages.

88.     Modine and Sundstrand's conduct, as described above, manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of community, and to the financial devastation that contaminating persons' property would cause to property owners, including but not limited to Gary and Lynda Seaton. This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award

of punitive damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, plaintiff Lynda Seaton prays for judgment in Count IV against defendants Modine and UTC Aerospace Systems, Inc., as successor in interest to Sundstrand, for compensatory damages described above, punitive damages, their costs herein expended and for such other relief as the Court deems just and proper.

STRONG-GARNER-BAUER, P.C.

Steve Garner – MO Bar #35899
Chandler Gregg - MO Bar #56612
Grant Rahmeyer – MO Bar # 58897
415 E. Chestnut Expressway
Springfield, MO 65802
Phone 417-887-4300
Fax 417-887-4385
sgarner@stronglaw.com
chandler@stronglaw.com
grahmeyer@stronglaw.com
*Attorneys for Plaintiff*